555 A.2d 305

Kirk Prescott, a Minor by his Parent and Natural Guardian Arletta James, and Arletta James in her own right, Appellants *v.* Philadelphia Housing Authority and Edward S. Cox, Appellees.

Argued December 16, 1988, before Judges PAL-LADINO and SMITH, and Senior Judge KALISH, sitting as a panel of three.

*H. Allen Litt*, for appellant.

*Leigh Bechtle, Bechtle and Ryan, P.C.*, for appellee.

OPINION BY JUDGE PALLADINO, March 10, 1989:

Arletta James (Appellant) appeals from an order of the Court of Common Pleas of Philadelphia County granting the motion of the Philadelphia Housing Authority (PHA) for summary judgment and ordering judgment entered in favor of PHA. We affirm.

Appellant rented an apartment from Edward Cox on January 1, 1985. Cox had a contract with PHA that permitted Cox to receive assistance payments for renting the premises to individuals eligible for section 8 housing assistance.[1] Appellant was section 8 eligible. In September 1985, Appellant was informed that her son, Kirk Prescott, had increased levels of lead in his blood.

---

[1] Section 8 housing assistance is provided by the federal government. The statutory authorization for the program appears at 42 U.S.C. §1437f and is part of the federal legislation, found at 42 U.S.C. §§1437-1437s, enacted, pursuant to U.S. Const. Art. 1, §8, cl.1, "to assist the several states and their political subdivisions to remedy the unsafe and unsanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of lower income." 42 U.S.C. §1437. PHA's authority to enter into a contract with Cox is found at 42 U.S.C. §1437f(b), which states, in pertinent part: "The Secretary [of the U.S. Department of Housing and Urban Development] is authorized to enter into annual contributions contracts with public housing agencies pursuant to which such agencies may enter into contracts to make assistance payments to owners of existing dwelling units in accordance with this section."

Appellant filed suit, on behalf of her son and on her own behalf, against PHA on July 23, 1986. In her complaint, Appellant alleges that Kirk's lead poisoning resulted from his ingesting lead-based paint, which had chipped or flaked from the walls of the apartment. Appellant alleged that PHA was responsible for Kirk's illness because PHA:

a) hired negligent, careless and reckless employees;

b) failed to inspect the premises;

c) allowed lead paint to exist on the walls in said premises for an unreasonable period of time;

d) failed to warn Plaintiff of the dangerous and defective condition existing inside said premises;

e) was otherwise negligent, careless and reckless at law.

Appellant's complaint, paragraph 10.

PHA filed an answer and new matter, in which it asserted it was immune to suit under 42 Pa. C. S. §8541.[2] In November 1987, PHA, after conducting some discovery, filed a motion for summary judgment on the basis that it was a local agency entitled to the immunity set forth in 42 Pa. C. S. §8541. The trial court granted this motion. Appellant's appeal is from that order.

A motion for summary judgment may properly be granted when the moving party has established that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Hall v. Acme Markets*, 110 Pa. Commonwealth Ct. 199, 532 A.2d 894 (1987). In considering a motion for summary judgment, all well-

---

[2] Section 8541 states: "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." The subchapter referred to includes 42 Pa. C. S. §§8541-8564.

pleaded facts, but not conclusions of law, in the non-moving party's pleadings must be accepted as true. *Harding v. Galyias*, 117 Pa. Commonwealth Ct. 371, 544 A.2d 1060 (1988). Summary judgment may be based on discovery materials and supporting affidavits as well as the pleadings. *Id.*

Appellant contends that her complaint states a cause of action which falls within the real estate exception to local agency immunity found at 42 Pa. C. S. §8542(b)(3). That subsection states, in pertinent part:

> **(b) Acts which may impose liability.**—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
>
> . . . .
>
> (3) *Real Property.*—The care, custody or control of real property, *in the possession of the local agency,* except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency.

(Emphasis added.) For the reasons which follow, we conclude that PHA was not in "possession" of the real property, the apartment, alleged to have been the cause of the increased level of lead in Kirk's blood, and, therefore, hold that Appellant has failed to state a cause of action which falls within the real property exception to local agency immunity.

Appellant admits that she leased the apartment from Cox and that Cox is the owner of the apartment. Appellant cites the definition of possession appearing in Black's Law Dictionary 1047 (5th ed. 1979)[3] and argues that the

---

[3] That definition states, in pertinent part:
The law, in general, recognizes two kinds of possession: actual possession and constructive possession. A person who

control exercised by PHA over the apartment falls within the definition of possession.

Appellant supports this argument by first asserting that the legislature intended "possession" to be liberally construed. This assertion has no merit. The Pennsylvania Supreme Court and this court have repeatedly held that the real property exception to local agency immunity is to be *narrowly construed*. *See Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987) ("Since section 3 is an exception to the rule of immunity, we believe that its extent must be narrowly interpreted given the expressed legislative intent to insulate political subdivisions from tort liability."); *York Redevelopment Authority v. Keener*, 101 Pa. Commonwealth Ct. 464, 516 A.2d 832 (1986), *petition for allowance of appeal denied*, 515 Pa. 591, 527 A.2d 549 (1987); *Vann v. Board of Education of the School District of Philadelphia*, 76 Pa. Commonwealth Ct. 604, 464 A.2d 684 (1983).

Appellant's other argument in support of her assertion that PHA is in possession of the apartment is based on the federal regulations setting forth the responsibilities of PHA and the property owners it contracts with under the federal section 8 housing assistance program. The regulations relevant to this case appear at 24 C.F.R. §§882.101-882.219. Appellant specifically refers us to

---

knowingly has direct physical control over a thing, at a given time, is then in actual possession of it. A person, who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it. The law recognizes also that possession may be sole or joint. . . .

sections 882.116(o), 882.209(h)(1), 882.209(k), and 882.-211(b).[4] These sections provide:

### §882.116 Responsibilities of the PHA.

. . . .

(o) Inspections prior to leasing and at least annually to determine that the units are maintained in Decent, Safe, and Sanitary condition, and notifications to Owners and Families of PHA determinations.

### §882.209 Selection and participation.

. . . .

(h) *Decent, safe, and sanitary conditions of the unit*. (1) Before approving a lease, the PHA shall inspect the unit for compliance with the PHA's housing quality standards as established in accordance with §882.109 or cause it to be so inspected on the date on which the Owner indicates that the unit will be ready for inspection, or as promptly as possible thereafter.

. . . .

(k) *Approval of Lease and execution of related documents*. (1) If the PHA determines that a unit which an Eligible Family wishes to lease is in Decent, Safe, and Sanitary condition, that the rent is approvable, and that the proposed Lease complies with the requirements of this part, the PHA shall notify the Owner and the Family of its determination of Lease approval, and furnish two copies of the Contract to the Owner. . . .

---

[4] Appellant references section 882.516(b). That section contains language similar to section 882.211(b) but is in a different subpart of the regulations, which contains regulations for the moderate rehabilitation program that are not relevant here.

**§882.211 Maintenance, operation and inspections.**
(b) *Periodic inspection*. In addition to the initial inspection provided under §882.209(h)(1), the PHA will inspect or cause to be inspected each dwelling unit leased to a Family at least annually and at such other times as may be necessary to assure that the Owner is meeting the obligations to maintain the unit in Decent, Safe and Sanitary condition. . . .

Appellant asserts that as a result of these regulations Cox has given control of his property to PHA and that such control is equivalent to possession. We disagree.

First we note that the regulations cited by Appellant, at most, do no more than place a duty on PHA *to inspect* the premises that either an owner or section 8 eligible individual wishes to have included in the section 8 housing assistance program. The regulations provide that the responsibility *to maintain* approved section 8 housing in conformity with housing quality standards *rests with the owner*. This is specifically set out in 24 C.F.R. §882.117, which provides, in pertinent part:

**Responsibilities of the Owners**
(a) The Owner shall be responsible . . . for performing all of his obligations under the Contract and Lease. The Owner's responsibilities shall include but not be limited to:
(1) Performance of all management and renting functions;

. . . .

(3) Performance of all ordinary and extraordinary maintenance;

. . . .

(b) Any owner may contract with any private or public entity to perform for a fee the services

required by paragraph (a) of this section: *Provided,* That such a contract shall not shift any of the owner's responsibilities or obligations.

. . . .

PHA's inspection responsibilities are merely aspects of its supervisory role in administering the federal section 8 housing assistance program. Even assuming that this supervisory control of PHA over Cox satisfied the possession requirement of the real estate exception, negligent supervision has repeatedly been determined to be insufficient to impose liability under the exception. *See e.g. Rhoads v. Lancaster Parking Authority,* 103 Pa. Commonwealth Ct. 303, 520 A.2d 122, *petition for allowance of appeal denied,* 515 Pa. 611, 529 A.2d 1084 (1987); *Frank v. Southeastern Pennsylvania Transportation Authority,* 96 Pa. Commonwealth Ct. 221, 506 A.2d 1015 (1986).

However, it is also clear that any control PHA has of the real property owned by third parties, who are participating in the federal section 8 housing program, does not constitute possession as that term is used in the real property exception to local agency immunity. The Pennsylvania Supreme Court has directed that because the real property exception is just that—"an *exception* to the absolute rule of governmental immunity," the exception "must be narrowly interpreted" in order to fulfill the "expressed legislative intent to insulate political subdivisions from tort liability." *Mascaro,* 514 Pa. at 351, 523 A.2d at 1123. Based on this direction, this court in *Buffalini v. Shrader,* 112 Pa. Commonwealth Ct. 228, 535 A.2d 684 (1987), refused to interpret "possession" to include the control exercised by a municipality through its zoning ordinance. *See also Kline et al. v. Pennsylvania Mines Corp.* et al., 120 Pa. Commonwealth Ct. 7, 547 A.2d 1276 (1988) (control of mine safety by the Depart-

ment of Environmental Resources through its regulatory and enforcement powers is insufficient to constitute "possession" of real property for purposes of the real property exception). We are likewise unpersuaded by Appellant's arguments that "possession" should be interpreted as including the supervisory control exercised by PHA in its administration of the federal section 8 housing assistance program.

Accordingly, we affirm.

### ORDER

AND NOW, March 10, 1989, the order of the Court of Common Pleas of Philadelphia County in the above-captioned case is affirmed.