**Lorraine WECKEL, in her capacity as Administratrix for the Estate of Patricia Deacher, Appellant**

**v.**

**The CARBONDALE HOUSING AUTHORITY.**

Commonwealth Court of Pennsylvania.

Argued March 7, 2011.

Decided May 5, 2011.

---

Frank J. Ruggiero, Archbald, for appellee.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Lorraine Weckel, Administratrix for the Estate of Patricia Deacher (Decedent), appeals an order of the Court of Common Pleas of Lackawanna County (trial court) granting summary judgment to the Carbondale Housing Authority (Authority) in the Estate's wrongful death and survival action. The trial court held that Weckel failed to produce evidence sufficient to establish a *prima facie* case of negligence. Finding no error, we affirm.

Decedent, who was age 67 when she died, was a tenant at South Highrise Building, a seven-story apartment building owned and operated by the Authority. South Highrise provides housing to elderly, low-income and disabled individuals at subsidized rent levels. It is not a skilled

care facility, nor does it provide any special services to residents. Reproduced Record at A313–314 (R.R. ___). On May 24, 2004, Decedent died from injuries she sustained after she fell from the roof of South Highrise to the ground below. The Lackawanna County Coroner's Office ruled Decedent's death a suicide.

On April 19, 2006, Lorraine Weckel, Decedent's daughter and the administratrix of her estate, filed a wrongful death and survival action against the Authority asserting, *inter alia*, that the Authority's negligence in maintaining South Highrise was the proximate cause of Decedent's death.[1] Weckel claimed that because Decedent was able to access the roof, the Authority had been negligent. Weckel asserted that the door to the roof, which operated like a hatchway, should have been locked.[2] The Authority filed an answer denying that it had been negligent and asserting the defense of sovereign immunity. The parties then commenced discovery.

Relevant to the Authority's duty of care to Decedent, Weckel produced the lease agreement between the Decedent and the Authority. It stated that the Authority would maintain South Highrise and its common areas in a clean, safe and decent condition. Weckel produced no other relevant evidence on this point.

The Authority produced a report prepared by its expert engineer, Richard Hughes, which concluded that the door to the roof met all applicable industry standards and building codes and did not have to be locked. Thomas Ruddy, the Authority's Executive Director, testified in his deposition that the door was always kept closed but unlocked. This policy was adopted in 1985, when a fire at the nearby North Highrise Building cut off stairwell access to residents, requiring the fire department to rescue residents from the building's balconies. Because South Highrise does not have balconies, the Fire Department and the Authority decided the door to the roof should be left unlocked so that, in a similar emergency, residents could be rescued from the roof. In addition, firefighters would be able to enter the building from the roof.[3]

Regarding the manner of Decedent's death, and whether it was accidental or a suicide, Weckel offered an affidavit signed by Decedent's son, Thomas Deacher. Deacher stated that he spoke to his mother the day of her death and she did not sound despondent nor did she express any desire or intention to harm herself.

The Authority offered the deposition testimony, and corresponding police reports, of five eyewitnesses who saw Decedent on the roof before she fell. They described Decedent as pushing herself off the roof or putting herself in the position to do so; not all witnesses actually saw the moment of her fall. The Authority also offered the deposition testimony of Decedent's neighbor, Dorothy Richter, who stated that three days before her death, Decedent told her she was disgusted and did not want to live any longer. Finally, the Authority offered the expert report of

---

1. The following counts in the complaint were dismissed on preliminary objections: Breach of Implied Covenant of Habitability; Breach of Implied Warranty of Habitability; Breach of Express Warranty; and Misrepresentation.

2. The "door" to the roof was mounted overhead, making it more like a hatch. *See* R.R. A508–13.

3. Carbondale Fire Chief Thomas Brennan corroborated Ruddy's statements and added that water access was also available on the roof of South Highrise for firefighters to connect to hoses. *See* R.R. A418–450.

Dr. Richard Fischbein, a board certified forensic psychiatrist, who reviewed Decedent's medical records. Dr. Fischbein concluded that Decedent suffered from anxiety, panic disorders, depression, and was suicidal. He also noted that Decedent's mental condition at the time of her death was complicated by the fact that she was intoxicated.

After discovery closed, the Authority moved for summary judgment. The trial court granted the motion because Weckel offered no evidence that the Authority breached a duty of care to Decedent and, in any case, the proximate cause of Decedent's death was her own volitional act. In this regard, the trial court noted that Weckel did not offer any evidence to prove Decedent's death was not a suicide. Weckel now appeals to this Court.

■ On appeal,[4] Weckel raises two issues. First, Weckel argues the trial court erred in holding she failed to produce evidence establishing the Authority breached a duty to Decedent.[5] Second, Weckel asserts the trial court erred in finding that Decedent committed suicide.

■ The Authority was created under the Housing Authorities Law.[6] In *Crosby v. Kotch*, 135 Pa.Cmwlth. 470, 580 A.2d 1191 (1990), this Court held that a housing authority is a Commonwealth agency and not a local agency. *Id.* at 1193.[7] As a Commonwealth agency, the authority is generally immune from suit pursuant to what is commonly referred to as the Sovereign Immunity Act (Act), 42 Pa.C.S. §§ 8521–8527. Sovereign immunity is waived when (1) the alleged act is a negligent act for which damages would be recoverable under the common law or by statute, and (2) the act falls within one of the specifically enumerated exceptions listed in Section 8522(b) of the Act, 42 Pa.C.S. § 8522(b).[8] Here, the trial court entered

---

4. Our scope of review is plenary, and in reviewing the trial court's order we apply the same standards for summary judgment as does the trial court. *Stimmler v. Chestnut Hill Hospital*, 602 Pa. 539, 553, 981 A.2d 145, 153 (2009) (citations omitted); *Cochrane v. Kopko*, 975 A.2d 1203, 1205 (Pa.Cmwlth. 2009). The trial court's order will be reversed only if it committed an error of law or abused its discretion. *Stimmler*, 602 Pa. at 553, 981 A.2d at 153. Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Royal v. Southeastern Pennsylvania Transportation Authority*, 10 A.3d 927, 929 n. 2 (Pa. Cmwlth.2010). *See also* PA. R.C.P. No. 1035.2. We review the record in the light most favorable to the nonmoving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party. *Royal*, 10 A.3d at 929 n. 2.

5. In this vein, Weckel also argues the trial court erred in not acknowledging the implied warranty of habitability in the lease between Decedent and the Authority. However, this argument, among others, was dismissed when

the trial court granted the Authority's preliminary objections on August 30, 2006. Weckel may not raise this issue on appeal from the grant of summary judgment.

6. Act of May 28, 1937, P.L. 955, *as amended*, 35 P.S. §§ 1541–1568.1.

7. The holding in *Crosby* was based upon Section 10 of the Housing Authorities Law, which provides that a housing authority "shall constitute a public body, corporate and politic, exercising the public powers of the Commonwealth as an agency thereof...." 35 P.S. § 1550. *Crosby* followed our Supreme Court's holding in *Marshall v. Port Authority of Allegheny County*, 524 Pa. 1, 568 A.2d 931 (1990), which construed identical language, used in the enabling legislation for port authorities, to mean that the Allegheny Port Authority was a Commonwealth agency.

8. In pertinent part, Section 8522(b) provides:

(b) Acts which may impose liability.—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sov-

summary judgment in favor of the Authority because it found that Weckel failed to make out a *prima facie* case of negligence at common law.[9] Specifically, the trial court determined that Weckel did not demonstrate that the Authority breached a duty of care owed to Decedent.

■ In her first issue, Weckel contends that the trial court erred in finding she failed to demonstrate that the Authority breached a duty of care to Decedent. Weckel contends that the Authority was obligated to maintain South Highrise in a safe condition, and it breached that duty by failing to lock the door to the roof. She argues that an unlocked door presented a danger to elderly tenants by allowing them to access the roof, and the Authority should have known of this danger. Weckel further contends that if the door had been locked, this tragedy could have been averted. The case, according to Weckel, should have gone to a jury.

The problem with Weckel's argument is that she offered no evidence to support her contentions, only conjecture. For example, she did not produce any evidence to show that South Highrise was not safe for its regular and intended use. She did not cite to local building codes or state law or regulations to support her contention that residents of an apartment building must be blocked from access to the roof.[10] Nor did she offer any evidence suggesting it was reasonably foreseeable that a tenant would use the door to access the roof and then fall off the edge. Weckel did not offer any evidence showing the Authority was aware of any danger or would have been aware of any danger if it made a reasonable inspection.

Instead, the evidence shows that the unfortunate actions of Decedent were not reasonably foreseeable and that South Highrise was not unsafe for its intended purpose. The Authority offered an expert report that found the door to the roof complied with all applicable standards and was not required to be secured. Moreover, the Authority's Executive Director testified that, in the 30 years he has been with the Authority, he did not know of any residents ever accessing the roof or falling from it. Thus, Weckel did not produce evidence sufficient to establish a cause of action in negligence at common law.

■ Even assuming, *arguendo*, that Weckel had established a *prima facie* case

ereign immunity shall not be raised to claims for damages caused by:
(1) Vehicle liability. [ . . . ]
(2) Medical-professional liability. [ . . . ]
(3) Care, custody or control of personal property. [ . . . ]
(4) Commonwealth real estate, highways and sidewalks. [ . . . ]
(5) Potholes and other dangerous conditions. [ . . . ]
(6) Care, custody or control of animals. [ . . . ]
(7) Liquor store sales. [ . . . ]
(8) National Guard activities. [ . . . ]
(9) Toxoids and vaccines. [ . . . ]
42 Pa.C.S. § 8522(b) (emphasis omitted). The exceptions to sovereign immunity are strictly construed. *Dean v. Department of Transportation,* 561 Pa. 503, 508, 751 A.2d 1130, 1132 (2000).

9. The common law elements of negligence are certainly well settled. The plaintiff must establish that (1) the defendant owed a duty of care to the plaintiff; (2) that duty was breached; (3) the breach was the proximate cause of the plaintiff's injury; and (4) the plaintiff suffered actual loss or damages. *Brown v. Department of Transportation,* 11 A.3d 1054, 1056 (Pa.Cmwlth.2011).

10. Weckel makes passing reference to Section 7.2.1.5.8 of the National Fire Protection Association Life Safety Code, which requires that a door to a roof either be locked at all times or allow re-entry to the building from the roof. *See* Appellant's Brief at 8. However, Weckel did not produce any evidence suggesting this provision had been adopted by the City of Carbondale or had been violated here.

of common law negligence, her claim would be barred by sovereign immunity. As stated above, sovereign immunity is waived only if the plaintiff's claim falls within one of the enumerated exceptions in 42 Pa.C.S. § 8522(b). The only exception possibly applicable in this case is the so-called "real estate exception," which provides that a Commonwealth agency is liable when a plaintiff's injuries are caused by a dangerous condition of Commonwealth agency real estate. 42 Pa.C.S. § 8522(b)(4).[11] *See also Thornton v. Philadelphia Housing Authority*, 4 A.3d 1143, 1148 (Pa.Cmwlth.2010). The agency must have known, or had reason to know, of the dangerous condition on its property to be held liable. *Gurnari v. Luzerne County Housing Authority*, 911 A.2d 236, 239 (Pa. Cmwlth.2006). If a defect or dangerous condition merely facilitates an injury which is caused by the acts of a person, the defect or dangerous condition is not actionable. *Williams v. Philadelphia Housing Authority*, 873 A.2d 81, 86 (Pa.Cmwlth. 2005) (citing *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987)).

▇ Here, Decedent's death was not caused by an alleged defect in the real estate, because an unlocked door to a roof is not a defect. The argument that her unfortunate death could have been prevented had the door to the roof been equipped with a lock is irrelevant.[12] Since her injury was not physically caused by the unlocked door the real estate exception

to sovereign immunity would not have been applicable. Therefore, even if Weckel had pled a *prima facie* negligence claim it would have failed because the Authority's sovereign immunity would not have been waived.

In sum, the trial court correctly granted summary judgment to the Authority.[13] For all of the foregoing reasons, we affirm the trial court's order.

## ORDER

AND NOW, this 5th day of May, 2011, the order of the Court of Common Pleas of Lackawanna County dated March 8, 2010 in the above captioned matter is hereby AFFIRMED.

---

11. In relevant part, it provides that a Commonwealth agency shall be liable for:

   A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency....

   42 Pa.C.S. § 8522(b)(4).

12. The real estate exception to sovereign immunity does not apply to claims that injuries could have been avoided or minimized if the Commonwealth agency had taken certain actions. *Dean*, 561 Pa. at 512, 751 A.2d at 1134.

13. Given our resolution of this issue, we need not address Weckel's second issue that the trial court erred in finding that Decedent committed suicide.